Derrick Xavier SHIELDS *v.* STATE of Arkansas

CR 03-866 166 S.W.3d 28

Supreme Court of Arkansas
Opinion delivered May 6, 2004

*John H. Bradley*, Managing Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

T<small>OM</small> G<small>LAZE</small>, Justice. Laurie Troup was shot to death on November 18, 1999, while she was working as a clerk at Movie Magic in Blytheville. Appellant Derrick Shields, who was fourteen at the time of the murder, was questioned about the shooting at the time, but was not charged. In March of 2001, Officer Scott Adams of the Blytheville Police Department was investigating a burglary in which Shields was involved. During the course of that investigation, Adams developed Shields as a suspect in the 1999 Troup murder. Shields was later charged with capital murder and aggravated robbery as an adult. The trial court denied Shields's request to transfer his case to juvenile court, and Shields was subsequently tried and convicted by a jury of capital murder and aggravated robbery. He was sentenced to life in prison.

For his first point on appeal, Shields argues that the trial court erred in denying his motion to suppress the statements he gave to the police; he argues that he was fifteen at the time he gave his statements, and the investigating officers never informed him of his *Miranda* rights in his "own language," as required by Ark. Code Ann. § 9-27-317(i)(2)(A) (Repl. 2002). He also argues that the officers never informed him that he had a right to have a parent present during questioning. In cases involving a trial court's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003); *Cox v. State*, 345 Ark. 391, 47 S.W.3d 244 (2001).

Shields gave four statements to police. On March 26, 2001, Investigator Scott Adams was investigating a burglary which included an interview with Shields. Shields's father brought the fifteen-year-old to the police station, and Adams read Shields his *Miranda* rights, using the general form used by the police for adult suspects. At that time, after signing the rights form, Shields admitted that he had knowledge of the burglary. Following this interview at the police station, Adams, Shields, and Shields's father returned to Shields's house, where the father consented to a search

of the residence. During the search, the officer found a note in Shields's bedroom that described a robbery attempt, and it was that note which prompted Adams to speak further with Shields. Adams took Shields back to the police station and again read him his *Miranda* rights; Shields again signed the rights form and gave a statement, though he made no mention of the Troup murder.

After questioning Shields further, Officer Adams spoke with Detective Ross Thompson about Shields's statement regarding the burglary. Detective Thompson commented that at one time, Shields had been a suspect in the Troup homicide. Officer Adams again questioned Shields, once more advising Shields of his *Miranda* rights, and this time asking him about the murder. Shields offered information about the gun used in the shooting. The next day, March 27, 2001, Officer Adams and Detective Thompson took Shields to search for the murder weapon, but they did not find it. Adams and Thompson then returned with Shields to the police station, where Adams advised Shields of his *Miranda* rights for a fourth time. This time, Shields gave a statement admitting his involvement in the Troup murder, though he denied that he fired the fatal shots.

On appeal, Shields argues that Officers Adams and Thompson did not comply with the protections afforded by § 9-27-317, in that they (1) failed to advise him of his *Miranda* rights "in his own language," and (2) failed to inform him that he had a right to have a parent present. Shields acknowledges that this court had held that § 9-27-317 does not apply to juveniles who are charged as adults, *see Jenkins v. State*, 348 Ark. 686, 75 S.W.3d 180 (2002), and *Ray v. State*, 344 Ark. 136, 40 S.W.3d 243 (2001), but suggests these cases should be overruled. However, Shields offers no persuasive authority for why our precedent should be over-turned; therefore, we decline to do so. *See Riggs v. State*, 339 Ark. 111, 3 S.W.3d 305 (1999). Further, those cases make it clear that the provisions of § 9-27-317(h) & (i) "are applicable only to matters being considered by the juvenile court." *See Jenkins*, 348 Ark. at 703-04. As the felony information charging Shields was not filed in juvenile court, he has no right to assert that his father should have been present during his questioning. *See id*; *see also Ring v. State*, 320 Ark. 128, 894 S.W.2d 944 (1995) (when a young offender is ultimately charged in circuit court, the failure of law

enforcement officers to obtain parental consent to waiver of right to counsel, pursuant to § 9-27-317, does not bar admissibility of confession).

 To the extent we consider Shields's suppression motion at all, we affirm the trial court's ruling. The trial court noted that, although both Shields and his father testified at the suppression hearing that Shields had asked to speak to his father, the court found the testimony of the officers — who stated that no such request was made — more credible. The evaluation of the credibility of witnesses who testify at a suppression hearing about the circumstances surrounding an appellant's custodial confession is for the trial judge to determine, and this court defers to the position of the trial judge in matters of credibility. *Wright v. State*, 335 Ark. 395, 983 S.W.2d 397 (1998). Conflicts in the testimony are for the trial judge to resolve, and the judge is not required to believe the testimony of any witness, especially that of the accused since he or she is the person most interested in the outcome of the proceedings. *Winston v. State*, 355 Ark. 11, 131 S.W.3d 333 (2003).

 Additionally, when asked at the suppression hearing whether he understood the rights form, Shields stated, "Yeah." He further stated that, before this encounter with the police, he had been "to the police department" twice, that he was advised of his rights on those occasions, that he had completed the eighth grade, and that he had no difficulty reading. He also admitted that he understood the statement, "you have the right to remain silent," and agreed that, during the tape-recorded statement he gave to police, he stated that he understood his rights and that the statement was of his own free will. Given the totality of the circumstances, it cannot be said that the trial court was clearly erroneous in ruling that Shields's confession was knowing and intelligent, and that Shields did not ask to speak to a parent. We hold the trial court did not err in denying Shields's motion to suppress.

For his second point on appeal, Shields argues that the trial court erred in granting the State's motion in limine seeking to exclude testimony that Troup's father, William Utley, had been an informant for law enforcement authorities, and had provided information that resulted in drug arrests. On review, we must determine whether the trial court abused its discretion in refusing

to allow evidence to be admitted. *Walker v. State*, 353 Ark. 12, 110 S.W.3d 752 (2003); *Burmingham v. State*, 342 Ark. 95, 27 S.W.3d 351 (2000).

■ We have held that a defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible. *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993) (citing *State v. Wilson*, 367 S.W.2d 589 (N.C. 1988)). This rule does not require that any evidence, however remote, must be admitted to show a third party's possible culpability; evidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt. There must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime. *Burmingham, supra*; *Zinger, supra* (citing *People v. Kaurish*, 52 Cal.3d 648, 276 Cal. Rptr. 788, 802 P.2d 278 (1990)).

■ On appeal, Shields notes that two drug dealers were sent to jail on the basis of Utley's information, and he urges that it "takes no great leap of insight to conclude that drug dealers who are arrested and sent to the penitentiary based upon the testimony of a drug informant could and would seek revenge on that informant." However, even assuming this "leap of insight" suggests the guilt of a third party, it plainly does no more than create an inference or conjecture as to that third party's guilt. Even though the evidence regarding the drug dealers may have demonstrated that someone else may have had a motive to commit Troup's murder, there was no direct or circumstantial evidence linking the drug dealers to the actual perpetration of this particular crime. The trial court did not abuse its discretion in granting the State's motion in limine.

■ Shields's third and final point for reversal is that the trial court erred in allowing Officer Adams to testify about a note Adams found in Shields's bedroom when he searched Shields's house following their first interview. The note itself was not introduced into evidence, but the court allowed Officer Adams to testify about the note, because it was the note that prompted the officer to consider Shields's involvement in the Troup murder. Trial courts have broad discretion in deciding evidentiary issues,

and their decisions are not reversed absent an abuse of discretion. *Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003); *Thomas v. State*, 349 Ark. 447, 69 S.W.3d 864 (2002); *Flores v. State*, 348 Ark. 28, 69 S.W.3d 864 (2002); *McFerrin v. State*, 344 Ark. 671, 42 S.W.3d 529 (2001).

Adams testified that he found the note during the search to which Shields's father consented, and the note lead him to think there may have been "a robbery planned." Adams stated that he took the note back to the police department and discussed it with Detective Thompson. Adams then questioned Shields again and asked him about the note; Adams then asked Shields about the murder. During these questions, Shields mentioned a gun of the specific gauge that had been used in the murder. Adams never asserted that the note mentioned plans of any specific robbery, and certainly not the robbery at the Movie Magic that culminated in Troup's murder. Adams simply testified that the note caused him to believe that there was "a robbery planned."

Shields argues that the testimony of Officer Adams had no independent relevance, because there was no issue about why Adams was questioning Shields. Further, he argues that, to the extent that it was relevant, it was more prejudicial than probative of anything, and should therefore have been excluded under Ark. R. Evid. 403. The State, on the other hand, argues that the testimony about the note indicated that Shields was motivated to commit crimes for pecuniary gain. Thus, the State claims, information regarding the note was admissible for establishing Shields's motive and served as an answer to his alibi defense.[1]

██ Adams's testimony was relevant in that it showed the jury how he developed his investigation. The trial court's ruling — that this evidence would show why this officer suddenly connected Shields to a murder that had occurred over a year and half ago — was not an abuse of discretion. Further, Adams's statements were not inherently prejudicial; he did not testify that the note described Shields's intent to rob the Movie Magic or to kill Troup. The testimony about the note was relevant, and its relevance was

---

[1] The State also offers an argument to the effect that the testimony about the note was not hearsay; however, Shields does not raise a hearsay argument on appeal. Therefore, we do not discuss the State's hearsay arguments.

not substantially outweighed by the danger of unfair prejudice. Thus, the trial court did not abuse its discretion in allowing Adams to testify about the note.

Because Shields was sentenced to life in prison, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to the appellant, and no error has been found. *See* Ark. Sup. Ct. R. 4-3(h).

Affirmed.