
# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-17-187

| | |
|---|---|
| | **Opinion Delivered** November 1, 2017 |
| CHRISTOPHER CUMMINGS<br><div align="right">APPELLANT</div> | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-15-331] |
| V. | |
| STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | HONORABLE CHARLES E. CLAWSON, JR., JUDGE |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

Christopher Cummings was convicted of multiple felonies and now appeals, arguing that the circuit court erred in (1) denying his motion to suppress his statement to police, and (2) denying his request to reduce his $1 million bond. We affirm.

In a felony information filed 5 May 2015, Cummings was charged with two counts of attempted capital murder; simultaneous possession of drugs and a firearm; possession of a firearm by certain persons; possession of a controlled substance Schedule I/II, methamphetamine or cocaine; possession of drug paraphernalia; fleeing; resisting arrest; and littering.[1] The information was later amended to include a firearm enhancement on the attempted capital-murder charges. A jury found Cummings guilty on all charges, and he

---

[1]The possession-of-a-firearm-by-certain-persons, fleeing, resisting-arrest, and littering charges were later nolle prossed.



was sentenced to an aggregate term of 160 years' imprisonment. Specific facts pertinent to the points on appeal will be discussed below.

## I. *Motion to Suppress*

On 3 May 2015, Cummings was the passenger in a Ford Mustang that was involved in a high-speed chase with police. During the chase, Cummings fired a gun toward the police cars in pursuit and struck two of the police cars. When the Mustang was finally stopped, Cummings fled on foot but "fell on his face" while running and was thereafter apprehended by police. Cummings resisted arrest but was eventually handcuffed and taken into custody. He was examined at the hospital, cleared of injuries, and taken to the police station, where, after having waived his *Miranda* rights, he gave a statement to police. In that statement, Cummings admitted shooting at the police officers and also told officers where to find a bag of narcotics that he had thrown from the car during the pursuit.

On 1 December 2015, Cummings filed a motion to suppress the statement he gave to police, asserting that he

> gave an incustodial statement at the police station, after having been examined for a head injury suffered while taken into custody and while not fully aware of circumstances of the interrogation, including signing forms or consents; any statement made by Defendant while in custody was not willful and in violation of *Miranda*.

The circuit court held a motion hearing on 4 January 2016. Officer Billy Kenny testified that he was present when Cummings was placed under arrest and during his later interrogation. Kenny said that he reviewed the *Miranda*-rights form with Cummings and that he appeared to understand his rights and was answering questions appropriately. Kenny denied threatening or coercing Cummings and stated that Cummings signed the *Miranda*

form voluntarily. Kenny explained that he had read Cummings his rights on camera but that a portion of the thirty-minute interview video, approximately the first sixteen minutes, was lost. On cross-examination, Kenny denied any knowledge of Cummings being struck in the head at the time of his arrest. On redirect, Kenny confirmed that Cummings had been treated at the hospital and released with no injuries for interview purposes.

Officer Joe Flack testified that he participated in Cummings's interview and that Cummings was not threatened or coerced into giving a statement. Flack said that Cummings understood the questions asked of him and responded appropriately "for the most part" but that "[h]e seemed to get a little confused a few times, kind of mumble a few things." Flack explained that Cummings talked about firing a gun to "get law enforcement off him" and told police about throwing drugs, which were in a computer case, out of the vehicle. Flack said that he later located the computer case and found three grams of a crystalline substance (later identified as methamphetamine) inside it.

Cummings testified that when he was arrested, he was "stomped on a pretty little bit," meaning that there were two officers sitting on his back, one officer standing on his arm, and three officers kicking him in the face, "bouncing [his] head back and forth." The last thing he remembered was an officer in a tactical vest kicking him in the face, then he woke up in the hospital. He claimed that the officers "scuffled [him] up a bit more" in the hospital. He said that he was later at the police station, which he "vaguely" remembered. Cummings first testified that he signed whatever they put in front of him without reading it; he later said that he did not "really" remember signing the *Miranda* form, although he admitted that it was his "scribble" on the signature line.

3

On cross-examination, Cummings confirmed that he had been arrested nineteen times and that he had *Miranda* rights read to him "a lot of times." He denied, however, ever signing a *Miranda*-rights form before because he had never been arrested for a "serious charge." Cummings also denied remembering much of the high-speed chase because he had "been up for a couple of days" and "was on a lot of drugs," specifically methamphetamine. He said that he did not remember telling the police about shooting the gun or where he threw the drugs. He claimed that he "was trying to say what they wanted to hear to get them to leave [him] alone."

After the testimony had concluded, the court announced it would review the interview video before making a ruling. The court later issued a letter opinion and found the following:

> The officers testified that Mr. Cummings was coherent at the time of the interview. It is true that he was taken to Conway Regional Hospital after his arrest due to the physical altercation that followed that arrest. However, he was treated and released. The video does show some signs of redness on his head particularly on the right side but his responses to the questions and his demeanor do not indicate that he was impaired as a result of his injuries.

> Therefore, it is the Court's conclusion . . . that the defendant's motion to suppress should be denied.

Cummings renewed his motion to suppress when his statement was introduced at trial, and the motion was again denied.

A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily. *Bell v. State*, 371 Ark. 375, 266 S.W.3d 696 (2007). In *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003), our supreme court clarified the appropriate standard

of review for cases involving a circuit court's ruling on the voluntariness of a confession—we make an independent determination based on the totality of the circumstances. We review the circuit court's findings of fact for clear error, and the ultimate question of whether the confession was voluntary is subject to an independent, or de novo, determination by the appellate court. *Clark v. State*, 374 Ark. 292, 287 S.W.3d 567 (2008).

To determine whether a waiver of *Miranda* rights is voluntary, knowing, and intelligent, we look to see if the statement was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006). To make this determination, we review the totality of the circumstances surrounding the waiver including the age, education, and intelligence of the accused; the lack of advice as to his constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; the use of mental or physical punishment; and statements made by the interrogating officers and the vulnerability of the defendant. *Id.* We will reverse a circuit court's ruling on this issue only if it is clearly against the preponderance of the evidence. *Id.* Evaluating the credibility of witnesses who testify at a suppression hearing about the circumstances surrounding an appellant's custodial confession is for the circuit court to determine, and this court defers to the circuit court in matters of credibility. *Shields v. State*, 357 Ark. 283, 166 S.W.3d 28 (2004).

On appeal, Cummings argues that (1) his statement was coerced because he was beaten by police officers at the time of his arrest and beaten again at the hospital before he was taken to the police station for his interrogation, and (2) he lacked capacity to waive his *Miranda* rights due to the combined effects of sleep deprivation, intoxication, and head

injuries. In response, the State first asserts that Cummings failed to preserve his coercion argument because he did not raise it below and did not get a ruling on such an argument from the circuit court. Alternatively, the State argues that his coercion argument has no merit because it turns solely on the credibility of the witnesses; Cummings bases his argument on his own testimony, but that testimony was refuted by the officers' testimony, and it is within the circuit court's province to resolve conflicting testimony. *See Shields*, *supra*.

Second, the State contends that Cummings failed to argue below that his statement was involuntary due to sleep deprivation or intoxication. And as to his argument that his head injuries rendered him incapable of waiving his *Miranda* rights, the State asserts that this argument is again based solely on Cummings's own testimony, which was refuted by the officers' testimony. The circuit court weighed the evidence presented at the suppression hearing and determined that Cummings was not impaired as a result of any alleged injuries, and this court should affirm the circuit court's conclusion.

We agree that Cummings did not articulate a coercion argument below, nor did he obtain a ruling regarding coercion. As to capacity to consent, the circuit court evaluated the credibility of the witnesses who testified at the suppression hearing and found that Cummings was not impaired, and this court defers to the circuit court in matters of credibility. *See Shields*, *supra*. We also note that Cummings provided no medical evidence of a head injury to support his claim of incapacitation. We therefore affirm the denial of the motion to suppress.

## II. *Request to Reduce Bond*

At Cummings's arraignment on 5 May 2015, the State requested a $1 million bond. The State argued that Cummings had committed multiple felonies, was currently on parole, and had a lengthy criminal history, including arrests and convictions for failure to appear. It also asserted that Cummings was an "extreme flight risk" and had "endangered himself and others" by shooting at the police during a high-speed chase. Defense counsel, who had just been appointed, responded that a $500,000 bond would be sufficient. After questioning Cummings about his lack of employment, the circuit court accepted the State's recommendation and set the bond at $1 million but also stated its willingness to address the bond amount again if the defendant wished to request a hearing.

Several days later, Cummings moved for a hearing on his bond, asserting that $1 million was excessive and unconstitutional. At a motion hearing on 4 January 2016, defense counsel called no witnesses but argued that the bond was unreasonably high. After again questioning Cummings about his lack of employment and reviewing Cummings's criminal history of nineteen prior arrests, the court found that the case was set for trial on January 21 and that the bond would not be changed. After additional pretrial hearings and two continuances at Cummings's request, the case proceeded to trial on 16 August 2016.

On appeal, Cummings asserts that he was denied reasonable bond. The setting of the bond amount rests in the reasonable discretion of the circuit court. *Mun. Ct. of Huntsville v. Casoli*, 294 Ark. 37, 740 S.W.2d 614 (1987). Our supreme court has held that once an appellant has been found guilty and is incarcerated, the issue of pretrial bond is moot. *Bower v. State*, 2010 Ark. 456. In addition, the proper means to challenge a bond decision is by a

writ of certiorari, and a party who does not seek a timely writ of certiorari from a bond decision abandons the issue.  *Id.*; *Irvin v. State*, 345 Ark. 541, 49 S.W.3d 635 (2001).

Cummings argues that this issue falls within either the "capable of repetition yet evading review" exception or the "substantial public interest" exception to the mootness doctrine.  He also contends that the circuit court failed to consider the factors listed in Ark. R. Crim. P. 8.5 (pretrial release inquiry) and Ark. R. Crim. P. 9.2 (release on money bail). Finally, Cummings asserts that the bond amount was unconstitutionally excessive considering his indigent status.

In response, the State denies that any exception to the mootness doctrine applies. Alternatively, the State argues that the circuit court was not required to make written findings of fact and that the circuit court did not abuse its discretion in setting the bail amount considering Cummings's extensive criminal history and his flight risk.

We hold that Cummings has abandoned this issue by waiting until after he had been convicted to appeal it.  Our supreme court has made clear that a writ of certiorari is the appropriate remedy to review bail-bond proceedings, and a party who does not seek a timely writ of certiorari from a bond decision abandons the issue.  *Bower*, *supra*; *see also Trujillo v. State*, 2016 Ark. 49, 483 S.W.3d 801.

Affirmed.

GLOVER and VAUGHT, JJ., agree.

*Kezhaya Law*, by: *Matthew A. Kezhaya*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.