Cite as 2021 Ark. App. 255

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-20-234

|  |  |
|---|---|
| | **Opinion Delivered** May 26, 2021 |
| SETH BRADLEY SMITH **APPELLANT** | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT |
| V. | [NO. 16JCR-17-1519] |
| STATE OF ARKANSAS **APPELLEE** | HONORABLE F. RANDY PHILHOURS, JUDGE |
| | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Seth Bradley Smith appeals his conviction by a Craighead County Circuit Court jury of one count of second-degree murder. Smith contends that the circuit court erred in denying his motion to suppress, allowing the State to introduce information from the autopsy report, and denying his motion for directed verdict. We affirm the circuit court.

In December 2017, Smith was charged with the second-degree murder of AS, his four-month-old son. At a jury trial, the State presented evidence that on 3 October 2017, Smith picked up AS from his babysitter between 4:00 and 5:00 p.m. and took him home. Smith's mother was at his home, and she fed the baby and changed his diaper while Smith took a shower. Smith's mother left at approximately 5:45 p.m. At 6:13 p.m., Smith called 911 and reported that there was "something wrong" with his baby and that the baby was "not really moving." A local firefighter responded in less than two minutes and found the

baby "grayish blue" in color and with no pulse, and he began administering CPR. Paramedics arrived, found the baby "completely unresponsive," and moved the baby to the ambulance, where they continued CPR. They also intubated the baby to help him breathe and inserted an interosseous line to administer medication. Emergency room personnel continued CPR and administration of medications until it was "deemed futile to continue." AS was pronounced dead at 7:09 p.m.

Smith told a police officer who responded to the 911 call that AS had been "crying and crying and he was acting like he couldn't breathe. I'm holding and shaking him and I'm just like—and I'm patting and finally he's just—he kind of just goes limp." In an interview with police six days after AS's death, Smith initially denied having done anything to harm AS but later admitted to shaking him "just for a second." He later said the shaking was "just for three or four seconds."

The Arkansas State Crime Laboratory chief medical examiner testified that AS's cause of death was "traumatic brain injuries" with contributory causes of "neck contusions/intramuscular hemorrhage." Specifically, the medical examiner explained that AS died from "blunt force trauma" to his head and internal injuries to his central nervous system, including retinal hemorrhages and optic-nerve hemorrhage, which indicated "a considerable amount of force, and the force was placed on the head and brain to disrupt critical areas inside the brain and cause[d] the infant to stop breathing." He agreed that these injuries can be caused by shaking and that he could not think of anything else that could have caused such injuries in this case.

The jury found Smith guilty of second-degree murder, and the court sentenced him to eighteen years' imprisonment. This appeal followed.[1]

I. *Sufficiency of the Evidence*

Although it is presented as his third point on appeal, we address Smith's challenge to the sufficiency of the evidence first due to double-jeopardy considerations. *Conte v. State*, 2015 Ark. 220, 463 S.W.3d 686. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *King v. State*, 2018 Ark. App. 572, 564 S.W.3d 563. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Weighing the evidence, reconciling conflicts in the testimony, and assessing credibility are all matters exclusively for the trier of fact, in this case the jury. *E.g.*, *Holland v. State*, 2017 Ark. App. 49, 510 S.W.3d 311.

Arkansas Code Annotated section 5-10-103(a)(1) (Repl. 2013) provides that a person commits murder in the second degree if the person knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life. In making its motion for directed verdict, the defense first renewed previous motions to suppress Smith's statement to the police and to exclude information from the autopsy.

---

[1]Smith filed a motion for new trial and a motion to reconsider sentence, but the arguments in those motions are irrelevant to the points on appeal.

(These issues will be discussed below as Points II and III on appeal.) The defense then argued that

> had the Court excluded those items there would have been a complete lack of evidence in this case and nothing on which the jury could found [sic] the defendant guilty and would definitely had resulted in a directed verdict or judgment of acquittal. We still assert that the evidence is insufficient and ask the Court to direct a verdict in his favor. We also assert, you know, the Court should deny—should grant those previous motions, exclude that evidence, and then based on that, find that there is insufficient evidence.

The defense made similar renewals after the close of the defense's case and the State's rebuttal.

On appeal, Smith argues first that the State failed to present sufficient evidence that AS's death was caused by injuries inflicted by Smith, because "the only evidence presented on this issue was derived from the autopsy report which was improperly admitted." He also contends that the State failed to present any evidence that he knowingly caused the death of his son under circumstances manifesting an extreme indifference to the value of human life; in other words, the State did not prove that Smith "was aware that the alleged act of shaking his son was practically certain to cause serious injury or death."

Smith's first point is not a challenge to the sufficiency of the evidence; it is a challenge to the admission of the autopsy report and its findings, which are addressed below in Point III. We note here that Smith's argument is factually incorrect because the autopsy report itself was not admitted into evidence.

As to his second point, it is not preserved for our review. Arkansas Rule of Criminal Procedure 33.1(a) (2020) requires that a criminal defendant specifically advise the circuit court of any deficiency in the State's proof. *Turley v. State*, 2020 Ark. App. 118 (holding

4

defendant must make a specific motion for directed verdict that advises the circuit court of the exact element of the crime that the State has failed to prove).  The rule is strictly construed, and a defendant's failure to adhere to the requirements of Rule 33.1(a) will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict.  *Id.*; Ark. R. Crim. P. 33.1(c).  A directed-verdict motion that merely asserts the State has failed to prove its case and does not inform the circuit court of any specific deficiency in the proof is inadequate to preserve a specific issue for appeal.  *Peoples v. State*, 2019 Ark. App. 559, 590 S.W.3d 783.  In this case, Smith never argued to the circuit court that the State had failed to prove he acted knowingly, so we are precluded from addressing that argument now.

We acknowledge the comprehensive and fervent arguments against Rule 33.1 that Smith presented in his reply brief; but this appeal is not postured in a manner that requires us to address them, much less in the sweeping manner that the reply brief invites.

## II.  *Motion to Suppress*

Shortly after he was charged, Smith filed a general motion to suppress evidence including "a confession or admission of a defendant involuntarily made."  At a motions hearing held on 12 November 2019, the circuit court addressed Smith's specific argument that the court should suppress statements he made to Ron Richardson, an investigator with the Craighead County Sheriff's Department.  Richardson testified that he had been assigned to investigate a possible homicide and interviewed Smith on 9 October 2017 (six days after AS's death).  Richardson explained to Smith, "Whenever there's a death like this . . . the sheriff's office, comes in and does a follow-up, final, formal investigation[.]"  Richardson

5

advised Smith of his *Miranda* rights, and Smith initialed and signed a waiver of his rights. Richardson also made an audio and video recording of his interview with Smith, and that recording was played for the court.

In that interview, Smith explained that he had been alone with AS and that he had been fussy, but Smith initially denied having shaken AS. He denied that he had ever heard of "shaken baby syndrome." Richardson explained that the police knew AS had died from being shaken and that it was done by either Smith or his mother, who was the only other person who had been with AS immediately prior to the time he sustained his injuries. Richardson stated, "[Y]ou had a momentary lapse of reasoning. Now, either you shook this child to cause his death or your momma did. I don't think it was your momma, do you?" Smith replied, "I know it wasn't her. She loved him a lot." Smith insisted the baby had been fine when his mother left and then said that he had "heard of people losing their cool and shaking their babies before." Smith admitted he lost his cool "[j]ust for a second." Smith agreed that he had held AS around his ribs and shaken him "for a second." He later described it as "about three or four" shakes but insisted he had not meant to hurt AS. Richardson denied ever threatening or intimidating Smith during the interview.

The State also played a video of Smith speaking with his fiancé, Ruby Keller, in which Smith said that he "didn't mean to." Keller said, "Now, our son is gone because of you," and Smith replied, "I know it's because of me." On cross-examination, Richardson agreed that he had told Smith that the police believed either he (Smith) or Smith's mother had caused AS's injuries.

6

The defense argued that Smith's first statement was the result of coercion. It asserted that the police had interviewed Smith soon after AS's death, when Smith would be vulnerable, and that the police misled Smith by telling him he was coming in to help the police complete their report. Defense counsel argued,

> [A]fter he's repeatedly told them he did nothing to cause harm, they say now we have absolute proof from the medical examiner. It's either going to be you, or it's going to be your mom. Which one is it? And at that point, he makes a statement about sort of a half-hearted statement I shook him, and, again, we'll address something later. We do not believe that is a confession. . . . [W]e think the purpose of injecting his mother was coercion and that alone with the misleading nature, which they bring in him and are deceptive about what they know, what their purposes are, and then try to coerce him into making some type of statement by threatening his mother. We think all are factors that should—that justify the State not being allowed to use this statement.

The defense also contended that the police intentionally put Smith and Keller together in the interrogation room and that "knowing that he is going to make some type of apology or some kind of other statements is a violation of *Miranda*." The circuit court found Smith's statements admissible and entered a written order to that effect.

On appeal, Smith again argues that his statements to the police were the result of coercion. A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily. *Bell v. State*, 371 Ark. 375, 266 S.W.3d 696 (2007). To determine whether a waiver of *Miranda* rights is voluntary, knowing, and intelligent, we look to see if the statement was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006). We review the totality of the circumstances surrounding the waiver including the age,

7

education, and intelligence of the accused; the lack of advice as to his constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; the use of mental or physical punishment; and statements made by the interrogating officers and the vulnerability of the defendant. *Id*. We will reverse a circuit court's ruling on this issue only if it is clearly against the preponderance of the evidence. *Id*. Evaluating the credibility of witnesses who testify at a suppression hearing about the circumstances surrounding an appellant's custodial confession is for the circuit court to determine, and this court defers to the circuit court in matters of credibility. *Shields v. State*, 357 Ark. 283, 166 S.W.3d 28 (2004).

In this case, Smith focuses on a statement made by the interrogating officer and Smith's vulnerability at the time of the interview. Smith argues that he said he shook AS only "in response to the officer's overt threat that Appellant's mother would be subjected to investigation and prosecution if Appellant did not tell the officer what he wanted to hear." He also contends that he was in the "midst of grieving" and was misled by the officer about the purpose of the interview. He claims he was told that the interview was just to "finish the paperwork" and was "no big deal." Smith also argues that recording the conversation between Smith and his fiancée was a "deceptive interrogation practice" that violated due process and basic human decency.

We hold that the circuit court did not err in denying the motion to suppress. There was no threat, overt or otherwise, to prosecute Smith's mother; in fact, the officer made clear that he did not think Smith's mother had hurt AS. The officer was simply stating a matter of fact: two people had been with AS prior to his injuries, Smith and his mother.

8

Therefore, one of them had inflicted the injuries. As to the timing of the interview, it did not take place in the immediate aftermath of AS's death; it was six days later, both Smith and his fiancée came in voluntarily to be interviewed, and Richardson did not know when AS's visitation and funeral had been scheduled. Contrary to Smith's assertions, Richardson did not tell Smith that the interview was just to "finish the paperwork" and "no big deal." Those were phrases used by defense counsel in questioning Richardson at trial. And finally, Smith develops no real argument about the recorded conversation between him and his fiancée, but instead makes the conclusory statement that it was a "deceptive interrogation practice." Absent some additional argument or some citation to authority, we decline to address it. *Springer v. State*, 2015 Ark. App. 605.

### III. *Confrontation Clause*

At the motions hearing held prior to trial, the defense raised a concern regarding the autopsy report, specifically that the doctor who performed the autopsy, Dr. Christy Cunningham, was not going to testify. Instead, Dr. Charles Kokes would offer his own expert testimony based on the autopsy report. The defense argued this would violate Smith's rights under the Confrontation Clause. The court overruled the defense's objection but said it would revisit the issue "when the time comes." The State clarified that it did not intend to introduce Dr. Cunningham's autopsy report.

On the second day of trial, before resuming testimony, the court again addressed the issue and denied the defense's objection based on *Sauerwin v. State*, 363 Ark. 324, 214 S.W.3d 266 (2005) (holding that defendant's confrontation rights were not violated when medical expert, who had not conducted autopsy on body of murder victim, testified

9

regarding cause of victim's death). Defense counsel also raised an objection to Dr. Kokes's report and asked that Dr. Kokes not refer to Dr. Cunningham's conclusions. The parties agreed to limit Kokes's testimony and report to eliminate references to Dr. Cunningham.

Before this court, Smith argues that the circuit court erred by allowing the State to introduce information from the autopsy report without calling the medical examiner who performed the autopsy to testify at trial. The admissibility of evidence rests in the broad discretion of the circuit court. *Miller v. State*, 2010 Ark. 1, 362 S.W.3d 264. We will not reverse the circuit court's ruling on the admissibility of expert testimony or a hearsay question unless the appellant can show an abuse of discretion. *Id.* To qualify as an abuse of discretion, the circuit court must have acted improvidently, thoughtlessly, or without due consideration. *Id.* Additionally, this court will not reverse an evidentiary ruling absent a showing of prejudice. *Id.*

Citing cases from other jurisdictions, Smith asserts that certain information contained in autopsy reports is testimonial and cannot be admitted at trial unless the person who prepared the report is unavailable or subject to cross-examination. Smith contends that Dr. Kokes had not conducted any independent investigation of his own, he did not independently verify that the information in the autopsy report was accurate, and the defense was prejudiced by Dr. Kokes's testimony because it "was the only evidence admitted which could have met the State's burden on the issue of causation." Smith does not address *Sauerwin*, *supra*, which the circuit court relied on in making its ruling.

In *Sauerwin*, the Arkansas Supreme Court found no error in allowing a medical examiner who had not performed the autopsy to testify on the results and meaning of the

10

autopsy report. Basing its opinion on Ark. R. Evid. 703, our supreme court held that the medical examiner's testimony

> was not a reading of the report, but was an expert analysis and opinion based upon his review of the report as well as the photos. This type of expert testimony and reliance upon autopsy reports is in line with the purposes of Rule 703. For the above reasons, it is clear that the trial court did not abuse its discretion in allowing the expert testimony.

363 Ark. at 328–29, 214 S.W.3d at 270. We have a similar situation here: in forming his own expert opinion, Dr. Kokes reviewed the original autopsy report, the investigative reports submitted to the crime laboratory, the medical records, and the photographs and tissue slides taken at the autopsy. We therefore hold that the circuit court did not err in relying on *Sauerwin* and allowing Dr. Kokes to testify.

In his reply brief, Smith cites *Alejandro-Alvarez v. State*, 2019 Ark. App. 450, 587 S.W.3d 269, as further support for reversal. In that case, this court held that the appellant's Sixth Amendment right to confront his accuser was denied when an analyst who did not conduct the DNA testing was allowed to testify regarding the results of a DNA test performed at the crime lab. We nevertheless affirmed the appellant's convictions for rape and sexual assault because the error was harmless in light of other evidence at trial.

We hold that *Alejandro-Alvarez* is distinguishable, as its result on the Confrontation Clause issue stems from a line of U.S. Supreme Court cases holding that "certificates of analysis" or "testimonial certifications" of lab results made by analysts who did not testify at trial were testimonial in nature, thereby implicating the right of confrontation. *See Bullcoming v. New Mexico*, 564 U.S. 647 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); *Crawford v. Washington*, 541 U.S. 36 (2004). The Supreme Court has not ruled

11

on whether autopsy reports also fall into that category. And in Arkansas, *Sauerwin* is still good law, which we have no authority to overrule.

In addition, the analyst who testified in *Alejandro-Alvarez* specifically acknowledged that his work and results were "exclusively dependent" on the work of the prior analyst who had actually performed the physical laboratory work. 2019 Ark. App. 450, at 9, 587 S.W.3d at 273. Dr. Kokes, in contrast, reviewed all the material in the case, did not consider any information he could not independently corroborate, and reached an independent conclusion about AS's cause of death.

Affirmed.

VIRDEN and KLAPPENBACH, JJ., agree.

*Ben Motal*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Sr. Ass't Att'y Gen., for appellee.