BART F. VIRDEN, Judge
A Pulaski County jury convicted appellant Michael Mitchell of second-degree murder and first-degree battery, for which he received an aggregate term of thirty-four years' imprisonment.[1] Mitchell does not challenge the sufficiency of the evidence supporting his convictions; rather, he argues that the trial court made two evidentiary errors: (1) the trial court abused its discretion by excluding evidence of the victim's reputation for violence in the community and (2) the trial court abused its discretion by not admitting his statement made under the present-sense-impression exception to the rule against hearsay. We agree with Mitchell's first point; therefore, we reverse and remand.
I. Trial Testimony
Shannell Holmes was married to the victim, Troy Holmes. Shannell had two teenage daughters at home, Ayanna and Asia, and Roderick Gulley, Shannell's cousin, was staying with the Holmes family. On the evening of December 27, 2014, Roderick began arguing and "tussling" with his baby's mother, Tatiana Curry, about their baby spending the night at the Holmes residence. Roderick "removed" Tatiana from the home, and the police were called. Troy came home when he learned of the confrontation but soon left again. Shannell reached an agreement with Tatiana and her sister, Anjanae Curry, that they could return after a couple of hours to pick up the baby.
The sisters left and picked up Mitchell and Anjanae's boyfriend, Shaheed Williams. The group drove to the local Walmart where they saw Roderick; Williams and Roderick had "back and forth words"; and both Mitchell and Williams chased Roderick through the store-Williams admitted that he "had plans to whoop [Roderick]." Anjanae recalled that Tatiana had said that she was going to get her baby because the baby *378 was not with Roderick. The group then returned to the Holmes residence.
Tatiana went to the front door with Mitchell, while Anjanae and Williams stayed by the car on the street. Tatiana knocked on the door, and Mitchell, whom Shannell described as wearing "a camouflage monkey suit," began pounding on the door when no one answered. Shannell was home alone with her daughters and the baby, and she was frightened because Tatiana had arrived earlier than expected to pick up the baby and had not come alone. One of the daughters called Troy, who was nearby, and he quickly arrived back at the Holmes residence.
Shannell said that when Troy got out of the car, she heard him say, "What the fuck you in my yard for? Move around." She said that she did not see Troy with a weapon and did not hear Troy threaten Mitchell, but she suddenly heard pops and saw sparks coming from Mitchell's direction. Ayanna said that she was in her bedroom looking outside and saw Troy get out of the car. She said that she heard Troy say "[p]lease get the 'eff' out of my yard." Ayanna said that Troy was "walking casual like" up to the front door when the man wearing "a monkey suit" pulled a gun and shot Troy. Asia did not see what happened, but she heard Troy ask why people were in his yard, and she heard two gunshots. Derrick Beasley, who had arrived at the Holmes residence with Troy, said that Troy had told people "to get off in front of his door." He said that he did not see Troy swing at anyone but saw Mitchell walk from the front door back to the car and then heard a gunshot.
Tatiana said that, when Troy drove up, Mitchell ran back to the street and that Troy was arguing with Mitchell, Williams, and Anjanae. She heard Troy say "[g]et away from my house with that B.S." Tatiana described Troy as "pretty upset" and said that he was cursing. She was talking with Shannell about the baby when she heard gunshots behind her. Anjanae testified that, while Tatiana and Mitchell were at the front door of the residence, "some big guy pulls up and he was like he's going to beat our ass." She said that she and Williams then got out of the car and that Williams and Troy "square[d] up" to fight. Anjanae said that she was afraid of Troy because he had "charged" at them. According to Williams, Tatiana went to the front door alone to get the baby. He said, "[Troy] jumped out of the car. He started cursing and stuff and threatening us, telling us he going to beat our ass and shit like that. He ain't scared of nobody and stuff like that. He came rushing towards people." Williams further testified that Troy "didn't have no good intentions."
The testimony reveals that, after the confrontation in the front yard, Troy ran inside the Holmes residence where he collapsed. Everyone followed Troy inside the home; another shot was fired; and a brawl ensued, during which Asia was struck on the head with a heavy object, and she later discovered that she had gunshot wounds on both thighs. The Curry sisters, Williams, and Mitchell got back into their car and drove away from the scene. Williams said that, when they got to his mother's house, "everybody was rattled up and shooken up and stuff" and that he took the gun away from Mitchell, who was shaking and scared.
The medical examiner testified that Troy died of a gunshot wound to the torso and that he weighed 253 pounds, was six feet two, and had a blood-alcohol level of 0.163.
The jury was instructed on the defense of justification. Mitchell alleged that deadly physical force had been necessary to defend himself, Williams, or Anjanae. The jury was instructed that the defense was *379 available only if (1) Mitchell reasonably believed that Troy was committing or about to commit a felony battery with force or violence and (2) Mitchell used only such force as he reasonably believed to be necessary.[2]
II. Standard of Review
The decision to admit or exclude evidence is within the sound discretion of the trial court, and this court will not reverse a trial court's decision regarding the admission of evidence absent a manifest abuse of discretion. Jones v. State , 2011 Ark. App. 324, 384 S.W.3d 22. An abuse of discretion is a high threshold that does not simply require error in the trial court's decision, but requires that the trial court acted improvidently, thoughtlessly, or without due consideration. Id. Moreover, an appellate court will not reverse a trial court's evidentiary ruling absent a showing of prejudice. Id.
III. Discussion
A. Reputation for Violence
Evidence of a person's character or a trait of his or her character generally is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion. Ark. R. Evid. 404(a). There is, however, an exception for evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor. Ark. R. Evid. 404(a)(2). In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. Ark. R. Evid. 405(a). On cross-examination, inquiry is allowable into relevant specific instances of conduct. Id. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his or her conduct. Ark. R. Evid. 405(b).
The following colloquy occurred at the hearing on Mitchell's motion in limine:
[ DEFENSE COUNSEL ]: I guess we've got two preliminary issues, Your Honor. One is whether we can put on reputation evidence of the victim's trait for violence through members of the community, that he doesn't know about. I think that's our issue. And I'm saying under 405(a).
THE COURT : That who doesn't know about?
[ DEFENSE COUNSEL ]: That Mr. Mitchell doesn't know about. It looks like there were several cases in this court where [Troy Holmes] was convicted of domestic battery third and felony terroristic threatening. And I found three other cases where he has been convicted of domestic battery.
Based on that, I found a Mr. Dumas who was in this court and I brought him here today just in case-who would say he knew Mr. Holmes, has know[n] Mr. Holmes all his life. Mr. Holmes was married to his daughter. Mr. Holmes beat up his daughter. Mr. Holmes threatened to kill him. He talked to other members in the community, his neighbors, about Mr. Holmes. They also expressed a view that Mr. Holmes was a violent person, and had threatened them. I would then ask him what is your view of Mr. Holmes' reputation in the community. And he would say he's a violent person, *380 not a peaceful person, which-I'm contending that you can do both. We can-because that's one of the essential elements.
The trial court denied the motion. At trial, defense counsel made the following proffer of evidence:
I advised the court that I had a witness named David Dumas who Mr. Holmes had committed a terroristic threatening against and was convicted in 2000-in case 2009-3257. Mr. Dumas would've testified that he knew Mr. Holmes because Mr. Holmes was married to his daughter, lived at his house in the community in Little Rock. And that he knew of Mr. Holmes' violent character, had talked about his violent character with other people in the neighborhood who had advised Mr. Holmes [sic] that they were also aware of his violent characteristics. And Mr. Dumas would have testified that Mr. Holmes had a character trait of violence. And I would just submit this case file concerning Mr. Holmes' conviction concerning the terroristic threatening of Mr. Dumas and it's marked as Defendant's Exhibit 6.
On appeal, Mitchell argues that the trial court erred in excluding evidence of Troy's reputation for violence because it was a pertinent trait of character and was relevant to show the jury who the aggressor was in the confrontation because the jury heard two conflicting versions. He argues that, when self-defense is asserted, a victim's reputation for violence is admissible.
In McClellan v. State , 264 Ark. 223, 570 S.W.2d 278 (1978), McClellan alleged self-defense in the death of a man named Sitz. McClellan sought to introduce testimony by a witness, Frost, involving a specific prior act of aggression by the victim against Frost, but the trial court excluded the evidence. Our supreme court stated,
In the case at bar the question, then, is whether Sitz's character as an aggressive person was "an essential element" of McClellan's defense of self-defense. Obviously it was not. One might plead self-defense after having killed the most gentle soul who ever lived. In such a situation the decedent's character as a possible aggressor is being used circumstantially, not as a direct substantive issue in the case. The trial judge was therefore correct in disallowing the proffered proof of a specific instance of aggression on the part of the decedent.
McClellan , 264 Ark. at 227, 570 S.W.2d at 280.
In Halfacre v. State , 277 Ark. 168, 639 S.W.2d 734 (1982), Halfacre alleged self-defense in the shooting deaths of two victims. The trial court admitted testimony as to the reputations of the two victims under Rule 405(a), and it also admitted testimony about specific prior violent acts of the victims, of which Halfacre did have knowledge, under Rule 405(b), because it was probative of what Halfacre reasonably believed and was relevant to his claim of self-defense. The trial court, however, disallowed testimony of specific prior violent acts of the victims, of which Halfacre was not aware. Halfacre argued that the trial court erred in excluding evidence of specific violent acts because it was relevant to the issue of who was the aggressor. Halfacre relied on language in Smith v. State , 273 Ark. 47, 616 S.W.2d 14 (1981), in which the supreme court stated,
Evidence of a victim's violent character, including evidence of specific violent acts, is admissible where a claim of justification is raised. Such evidence is relevant to the issue of who was the aggressor and whether or not the accused reasonably believed he was in danger of suffering unlawful deadly physical force.
Smith , 273 Ark. at 49, 616 S.W.2d at 15.
The Halfacre court noted that
*381 [a]lthough the language itself in Smith is open to interpretation, the facts in Smith were significantly different from the facts in this case as to leave no doubt as to the meaning of those words. In Smith , the trial court had excluded not only evidence of incidents defendant knew of but also incidents directed against the defendant. In sharp contrast are the specific acts that appellant in this case proffered that not only did not involve the appellant but were incidents that he had no knowledge of. Given the facts in Smith , the plain language of the rules and our recent decision in McClellan , supra , we find no reason to give Smith the more expansive reading that appellant suggests.
Halfacre , 277 Ark. at 171, 639 S.W.2d at 736.
In Britt v. State , 7 Ark. App. 156, 645 S.W.2d 699 (1983), Britt was charged with first-degree battery after he shot a man in the back. He alleged the defense of justification. The trial court refused to permit him to prove a violent character trait of the victim by a specific instance of prior violent conduct, which was not shown to have been within the knowledge of the defendant. In affirming Britt's convictions, this court stated,
In those cases in which the specific acts were directed at the defendant or were within his knowledge before the crime, they are admissible as being probative of what he reasonably believed and therefore directly relevant to his plea of self-defense. Testimony of specific acts not shown to have been within the knowledge of the defendant are not directly probative of defendant's beliefs. It was not error for the trial court to restrict character trait evidence to reputation and opinions in the case now before us. It is noted that the trial court did properly admit reputation evidence tending to show the victim's trait for violence as probative of the issue of who was the aggressor.
Britt , 7 Ark. App. at 161, 645 S.W.2d at 702.
Here, the State counters Mitchell's argument, asserting that
[d]espite Appellant's claims that Mr. Dumas would testify to victim Holmes's reputation in the community, which may have been allowable to show who was the aggressor, it is clear from the record and his proffered evidence that he intended to offer circumstantial evidence from past instances to show that Holmes acted in conformity therewith in this instance.
Defense counsel told the trial court that he sought to admit testimony about Troy's reputation for violence in the community under Rule 405(a). By mentioning specifics about the charges against Troy, defense counsel was showing the trial court the basis for Mr. Dumas's opinion that Troy was a violent person. To the extent that defense counsel said that Troy's violent character was "an essential element" of his defense of justification, he was wrong given the holding in McClellan, supra. Because Mitchell was unaware of any specific instances of violent conduct by Troy, evidence in that regard could not have had any bearing on Mitchell's claim of self-defense, i.e., what he reasonably believed. While evidence of specific violent acts by Troy was inadmissible because Mitchell had no knowledge of them, Mitchell was entitled to introduce testimony about Troy's reputation for violence in his community because that evidence was probative of who was the aggressor. Rule 405(a) clearly permits admission of such evidence, and the State essentially concedes that testimony about Troy's violent reputation was admissible. The trial court *382 erred in not permitting Mitchell to offer such testimony.
Before an evidentiary error may be declared harmless, the reviewing court must conclude that the error is slight and the remaining evidence of a defendant's guilt is overwhelming. Anderson v. State , 71 Ark. App. 200, 33 S.W.3d 173 (2000). Mitchell argues that the trial court's ruling was prejudicial because a critical issue was whether it was Mitchell or the victim who was the first aggressor. We agree and conclude that the remaining evidence was not overwhelming where the issue of who was the aggressor hinged on the credibility of the witnesses. Green v. State , 59 Ark. App. 1, 953 S.W.2d 60 (1997). Although there was testimony that the victim had threatened and rushed those in the yard, that testimony came from Mitchell's friends. On the other hand, evidence was admitted that portrayed Mitchell as the aggressor in that there was testimony suggesting that Mitchell, Williams, and the Curry sisters were angry when they went to pick up Tatiana's baby from the Holmes residence and testimony from Troy's family and friend that Mitchell shot Troy without provocation. Because the trial court's ruling, which excluded evidence of Troy's reputation for violence in the community, prevented Mitchell from offering additional proof from a disinterested witness that the victim was the aggressor, we cannot say that this error was harmless.
B. Present-Sense Impression
Arkansas Rule of Evidence 803(1) provides that present-sense impression is an exception to the rule against hearsay. A present-sense impression is a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. The statement must be contemporaneous or nearly contemporaneous with the event. Brown v. State , 320 Ark. 201, 895 S.W.2d 909 (1995).
Defense counsel sought to introduce a statement made by Williams during a police interview in which he said that Mitchell told him in the car as they fled from the scene that he had shot Troy because he was scared and because Troy kept coming toward him. At trial, defense counsel argued that this statement occurred immediately after the confrontation and during the drive away from the scene. The trial court said, "Immediately has to be immediately," and would not allow the statement into evidence.
On appeal, Mitchell argues that the trial court erred in excluding the statement because Mitchell made the statement to Williams in the car immediately after the shooting, and it explains and describes the shooting of Troy as Mitchell perceived it. Mitchell argues that excluding such testimony was prejudicial to his defense.
We cannot say that the trial court abused its discretion in excluding this testimony. We agree with the trial court that the statement did not qualify as a present-sense-impression exception. The evidence indicated that after the shooting in the front yard, Troy ran into the residence; everyone followed Troy into the house; Troy collapsed; at least one more shot was fired; one of Shannell's daughters dragged Troy into the hallway; a brawl ensued; Asia was struck on the head and suffered gunshot wounds to her thighs; Tatiana got the baby and met the others in the car; and then the group drove to the home of Williams's mother, which was an unknown distance from the Holmes residence. It was during this car ride that Mitchell made the statement to Williams. The statement was not shown to have been made while Mitchell was perceiving the event or immediately thereafter. In any event, Williams was permitted to testify that *383 Mitchell was scared and shaking after the confrontation and that Troy had rushed at people in his front yard.
Reversed and remanded.
Abramson and Whiteaker, JJ., agree.

The sentences for each offense were enhanced for employing a firearm as a means of committing the offense and for committing the offense in the presence of a child.

See Ark. Code Ann. § 5-2-607 (Supp. 2017).