Cite as 2024 Ark. App. 98

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-23-270

| | |
|---|---|
| HEATHER LONG | Opinion Delivered February 14, 2024 |
| APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CR-22-69] |
| V. | HONORABLE L. WREN AUTREY, JUDGE |
| STATE OF ARKANSAS APPELLEE | AFFIRMED |

## RITA W. GRUBER, Judge

Heather Long appeals her conviction by a jury for possession of a controlled substance. She was sentenced as a habitual offender to twelve years in the Arkansas Division of Correction and a $7500 fine.

Long raises four points on appeal. She contends that the circuit court erred by (1) failing to grant her motion to suppress due to destroyed evidence; (2) failing to give a jury instruction regarding destruction of body-cam video of the search and her arrest; (3) admitting drug evidence over her objection to chain of custody; and (4) denying her motion for a directed verdict.

The relevant events in this case began on December 31, 2021, when Deputy Gary Sumner of the Miller County Sheriff's Department made a traffic stop for expired tags on the car Long was driving. Sumner smelled the odor of marijuana coming from inside the car.

After learning that Long's driver's license was suspended and that there was a search waiver on file, Deputy Sumner searched the inside of the car. He opened the center console and found a small clear plastic baggie containing what he believed to be methamphetamine. He showed it to Deputy Putrell, who by then had arrived as backup. Long was then arrested and charged with possession of a controlled substance. Sumner's body camera (body cam) was turned on for the duration of the incident.

The State's evidence at trial included testimony by Deputy Sumner and Quinton Bryant, a forensic chemist at the Arkansas State Crime Laboratory. Summer testified that he retrieved the baggie of alleged methamphetamine from the car at the conclusion of the traffic stop, took it to the sheriff's office, and weighed it with the contents inside. He testified that he placed his body cam on its charger at the end of his shift. He said it was his understanding that the body cam was set up to automatically download into "the system," where it would be kept for a certain time period before it "falls off the system," but he did not know the length of the time period.

Photographs that Sumner had taken were introduced into evidence. One photo shows the baggie, its contents still inside, lying on a scale that displays a weight of 0.7 grams. Sumner testified that after weighing the baggie with contents, he put it in an envelope that he taped and labeled and initialed before placing it in an evidence locker and locking it. He explained that "if it's believed to be narcotics, it will be retrieved by the narcotics task force"; and in this case, Detective Pendergrass, who was not in court because his father had passed away, transported the evidence to the Arkansas State Crime Laboratory's satellite office in

2

Hope and later transported it back to Miller County. At trial, the State asked Sumner to identify an envelope bearing his initials on the outside; he did so, stating that it was the one in which he had placed the small plastic baggie. He removed the baggie from the envelope during his testimony and, noting his initials on the baggie, identified it as the one he had found in Long's car.

Quinton Bryant testified that he received an evidence envelope with the baggie inside and that he tested and weighed the drugs—which proved to be 0.1892 grams of methamphetamine. He ascribed the difference between Deputy Sumner's and his own measurements to the fact that he weighed only the methamphetamine that was in the baggie. Bryant testified regarding the protocol used to track submissions that were made to the state laboratory. He explained that the Hope location simply collects submissions; that Detective Pendergrass was the submitting officer there, as shown by his signature on Miller County's submission sheet; and that, as shown by her signature, it was Courtney Hamilton who transported the evidence from Hope to the Arkansas State Crime Laboratory in Little Rock. Bryant testified that he did not see anything out of order or suspicious indicating that protocol had not been followed or that something had been changed that would impact the integrity of the evidence.

I. *Denial of Long's Motion for Directed Verdict*

Long presents this as her fourth point on appeal. However, preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of trial errors. *Keys v. State*, 2021 Ark. App. 469, at 6, 636 S.W.3d

835, 839. We will affirm a finding of guilt if it is supported by substantial evidence. *Id.* Substantial evidence is that which is of sufficient force and character that it will compel a conclusion without resort to speculation or conjecture. *Id.*

In her motion for a directed verdict, Long focused her arguments on the missing body-cam video from the search and seizure of the methamphetamine and on the chain of custody of the evidence. She never argued that the evidence was insufficient to prove that she possessed methamphetamine. A directed-verdict motion that merely asserts the State has failed to prove its case and does not inform the circuit court of any specific deficiency in the proof is inadequate to preserve a specific issue for appeal. *Farris v. State*, 2021 Ark. App. 191, at 3, 620 S.W.3d 559, 561. Here, Long's directed-verdict motion challenged the admission of evidence but failed to inform the circuit court of a specific deficiency in the evidence introduced at trial. Thus, it is not preserved for our review.

## II. *Motion to Suppress*

Long's first point on appeal is that the circuit court erred by failing to grant her motion to suppress the methamphetamine that was seized pursuant to the traffic stop and search. Long filed a pretrial motion titled "Motion to Suppress Evidence Due to Destroyed Evidence," stating that police officers' reports indicated there was body-cam footage but that none had been found. She raised arguments under the best-evidence rule, a *Brady* violation, and fundamental fairness and due process. The State responded that it had attempted to obtain the body-cam video but learned that videos in Miller County "fell off" the server after twelve months—as this one had done through no fault of the prosecutor's office or Deputy

4

Sumner. The State acknowledged that video footage would have been helpful to both sides but also noted that "[they have] tried cases for years without video footage." The State argued that the best evidence in this case was testimony by "the actual person who participated" and that there was other evidence in the form of pictures.

The circuit court overruled Long's motion to suppress, reasoning as follows:

> My understanding of the Arkansas rule on this is that it has to be a willful destruction or spoliation of the evidence. It can't be just an accidental destruction. Texas has a different rule. I do remember that about Texas law. You can get a jury instruction in Texas, I think, on inference. And that's all that this would be. This is not a Fourth Amendment exclusion violation. It could be strictly that you can be entitled to an inference. It would be in the form of a jury instruction, and the inference would be that they could assume that the evidence was favorable to the Defendant. But I don't see any evidence here that it was willful, and I don't think that—just an unexplained disappearance is not enough. You have [to] show intent, which is very, I agree, very hard to do, but that's what I understand the rule of law is in Arkansas.

Long argues on appeal that she was prejudiced by the State's destruction of body-cam video and failure to produce it in court. She characterizes this as a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, it is a violation of due process when the State suppresses evidence that is material to guilt or punishment. 373 U.S. at 87. Here, the State correctly notes that *Brady* applies only to the suppression of evidence rather than to preserve potentially useful evidence, such as the body-cam footage.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose material exculpatory evidence to the defendant *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). However, when there is a failure to failure to preserve

5

potentially useful evidence, this does not constitute a denial of due process of law unless a defendant can show bad faith on the part of the police. 488 U.S. at 58.

In *Wenzel v. State*, 306 Ark. 527, 815 S.W.2d 938 (1991), appellant contended that the circuit court erred in allowing the admission of DNA profile test results because they were obtained from vaginal-swab samples that were depleted during testing. He argued that the State's failure to preserve enough evidence for the defense to conduct its own tests deprived him of a fair trial. 306 Ark. at 532, 815 S.W.2d at 940. The circuit court admitted the evidence over appellant's objection, and our supreme court affirmed. *See also Terrell v. State*, 26 Ark. App. 8, 759 S.W.2d 46 (1988) (no bad faith in the destruction of a tape recording of the victim's statement).

To establish a due-process violation when potentially useful evidence is destroyed, as in the present case, the defendant must show that the evidence possessed exculpatory value that was evident before the evidence was destroyed and is of such a nature that comparable evidence could not be obtained by other reasonably available means. *Wenzel*, 306 Ark. at 532–33, 815 S.W.2d at 941. In addition, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 533, 815 S.W.2d at 941 (quoting *Arizona*, 488 U.S. at 58).

Long has failed to show that the body-cam video of the search was potentially exculpatory and that it contained evidence that was unobtainable by other means, such as how the State presented the trial testimony of Deputy Sumner. Further, she has not

established bad faith on the part of police regarding the deletion of the body-cam video. The circuit court found, and Long concedes, that the video was deleted inadvertently. Because the video was not destroyed in bad faith, she cannot prevail on appeal. The first point on appeal is affirmed.

### III. *Jury Instruction on Spoliation*

Long's second point on appeal is that the circuit court erred by failing to give the jury a spoliation instruction regarding the destruction of the body-cam video. She argued to the circuit court that the jury should be instructed on spoliation because the body-cam footage of the search and seizure had been destroyed. The court rejected her proposed instruction but allowed her to proffer it. It reads as follows: "If you find that the State intentionally lost, destroyed or failed to preserve body cam footage that the State knew or should have known would be evidence in this case, you may infer, but are not required to infer, that the evidence was unfavorable to the State."

A circuit court's decision on whether to give a particular jury instruction will not be reversed absent an abuse of discretion. *Adams v. State*, 2009 Ark. 375, at 10–11, 326 S.W.3d 764, 770. A nonmodel instruction should be given only when the circuit court finds that the instruction from the Arkansas Model Jury Instructions–Criminal does not state the law or that the model instructions do not contain a needed instruction on the subject. *Id.* at 11, 326 S.W.3d at 770. Even if an appellant proffers an instruction that is a correct statement of law, it is not erroneous for the circuit court to refuse to submit it to the jury. *Id.* The circuit court's ruling can be affirmed if was the right result, even when the court announced the

7

wrong reasons for doing so. *E.g.*, *McCoy v. State*, 348 Ark. 239, 240, 74 S.W.3d 599, 600 (2002) (supplemental opinion explaining that this doctrine remained the law, but this was not possible in appellant's case due to the presumption of correctness given to model jury instructions).

In *Autrey v. State*, 90 Ark. App. 131, 204 S.W.3d 84 (2005), a detective had destroyed his handwritten notes of a "wire conversation" between appellant and a confidential informant. Appellant argued that the jury should have been instructed on spoliation, giving the jury the ability to infer that the destroyed evidence was unfavorable to the party responsible for its spoliation. 90 Ark. App. at 141, 204 S.W.3d at 89. A spoliation instruction, which allows a jury to infer that destroyed evidence was unfavorable to the party responsible for its destruction, is not the law in criminal cases; it is a doctrine applicable only in civil cases. *Id.* Although there is a spoliation instruction in the Arkansas Model Jury Instructions–Civil, there is no corresponding instruction in the Arkansas Model Jury Instructions–Criminal. *Id.* Further, because there was no evidence of preexisting exculpatory value and there was comparable evidence readily available, the police were not required to preserve the handwritten notes as evidence. 90 Ark App. at 142, 204 S.W.3d at 89. Autrey's proposed spoliation instruction failed to contain the additional requirement that the defendant show bad faith on the part of the police to prove a due-process violation based on the destruction of potentially useful evidence. *Id.* (citing *Arizona*, 488 U.S. 51); *see also Wenzel, supra* (following *Youngblood*'s bad-faith requirement).

Here, we agree with the State that the circuit court did not abuse its discretion by rejecting Long's proffered instruction. The circuit court is not required to give a non-model jury instruction; furthermore, as the circuit court recognized, the spoliation instruction is an incorrect statement of law because it fails to require a finding of bad faith on the part of the State. There was no proof of bad faith on the part of the police in the deletion of the body-cam video. While the circuit court did not specifically mention bad faith, it reached the right result. *See, e.g.*, *McCoy*, 348 Ark. at 240, 74 S.W.3d at 600.

IV. *Chain of Custody*

Long's third point on appeal is that the circuit court erred by admitting evidence over her objection to the chain of custody. She contends that State's exhibit No. 5—a marked manila envelope containing the baggie of methamphetamine taken from her car and the submission form to the Arkansas State Crime Laboratory—and State's exhibit No. 6—the Arkansas State Crime Laboratory's report that the baggie contained 0.1892 grams of methamphetamine—should have been excluded due to a break in the chain of custody.

Long raised her chain-of-custody objection at trial before Quinton Bryant began his testimony about receiving the evidence envelope and testing the methamphetamine. Long argued that there was a break in the chain of custody because Deputy Pendergrass, who removed the evidence from the locker and transported it to the Arkansas State Crime Laboratory in Hope, Arkansas, was not in court to testify that he, indeed, had transported it. The circuit court overruled the objection after hearing arguments from both parties,

finding that Pendergrass's absence went to the weight of the evidence rather than to its admissibility.

The purpose of establishing chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. *Crisco v. State*, 328 Ark. 388, 391, 943 S.W.2d 582, 584 (1997). We will not reverse a circuit court's ruling on an evidentiary matter regarding admissibility of evidence absent an abuse of discretion because such matters are left to the sound discretion of the circuit court. *Guydon v. State*, 344 Ark. 251, 255, 39 S.W.3d 767, 770 (2001). To prove authenticity of evidence, the State must demonstrate a reasonable probability that the evidence has not been altered in any significant manner. *Id.* It is not necessary that every moment from the time the physical evidence comes into possession of a law enforcement agency until it is introduced at trial be accounted for by every person who could have conceivably come in contact with the evidence during that period. *Id.* Nor is it necessary that every possibility of tampering be eliminated; it is only necessary that the circuit court, in its discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with. *Id.* Minor uncertainties in chain-of-custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law. *Crisco*, 328 Ark. at 391, 943 S.W.2d at 585. Proof of the chain of custody for interchangeable items like drugs or blood needs to be more conclusive. *Id.* at 392, 943 S.W.2d at 585.

In *Duggar v. State*, 2013 Ark. App. 135, 427 S.W.3d 77, questions of who took a bag of marijuana from the police station to the crime lab and who first received it there did not

10

break the chain of custody. In *Duggar*, the State presented documentary and testimonial evidence on the contents and whereabouts of the evidence and that reasonable precautions were taken against the risk of adulteration or contamination. 2013 Ark. App. 135, at 9–10, 427 S.W.3d at 83. On appeal, we found that the circuit court did not err in admitting the evidence although no one could say how it got from the scene of the stop to the evidence locker.

In *Guydon*, 344 Ark. 251, 39 S.W.3d 767, appellant raised a chain-of-custody objection because of missing testimonies from two employees who handled the evidence at the Arkansas State Crime Laboratory. The submitting officer in *Guydon* testified that he weighed the evidence, put it in a sealed packet, placed the packet in a property envelope, completed the paperwork, sealed the envelope with evidence tape, initialed the tape, and transported the evidence to the crime lab; and the forensic chemist explained how the crime lab's protocol for receiving evidence had been followed. The circuit court overruled appellant's objection. The Arkansas Supreme Court noted that the State need only demonstrate a reasonable probability that the evidence had not been tampered with. *Id.* at 7, 39 S.W.3d at 255.

Here, the discrepancy in the weight of the methamphetamine seized, as measured by Sumner in the sheriff's department and by the forensic chemist in the crime lab, did not render the evidence inadmissible: the forensic scientist explained that the two weights were obtained by weighing the methamphetamine with and without the baggie. *See Jones v. State*, 82 Ark. App. 229, 235, 105 S.W.3d 835, 839 (2003) (discrepancy due to weighing the

marijuana along with other items); *Guydon*, *supra* (police weighed the contraband itself just as the crime laboratory did, with the question on appeal essentially becoming whether the weight discrepancy could be explained because different scales were used in the field and the laboratory). Because Long failed to establish that the evidence had been tampered with or somehow adulterated, the evidence was not rendered inadmissible simply because there was neither testimony from Pendergrass, who took the drugs from the sheriff's office and placed it into the evidence locker at Hope, nor from Hamilton, who transported the drugs to Little Rock. *See Duggar*, *supra*.

Long further argues that Deputy Sumner was unable to identify who took the evidence from him to the sheriff's office or who took it to the crime lab, that the roles of Pendergrass and Hamilton in transporting the evidence were not revealed until trial, and that the absence of their testimony went to proof of a break in the chain of custody. The weight of live testimony and the fact that particular testimony is missing, however, are simply factors to assist the trier of fact in determining if the State demonstrated a reasonable probability that the evidence had not been altered in any significant manner. We find no abuse of discretion in the circuit court's overruling appellant's chain-of-custody objection and the court's admitting State's exhibits 5 and 6 into evidence.

Affirmed.

THYER and BROWN, JJ., agree.

*Phillip A. McGough, P.A.*, by: *Phillip A. McGough*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.

12