Cite as 2024 Ark. App. 459

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-23-735

| | |
|---|---|
| JEREMY REED<br><br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered September 25, 2024<br><br>APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT<br>[NO. 47BCR-22-198]<br><br>HONORABLE SCOTT A. ELLINGTON, JUDGE<br><br>AFFIRMED |

**MIKE MURPHY, Judge**

A Mississippi County Circuit Court jury convicted appellant Jeremy Reed of first-degree murder. Reed was sentenced to twenty-five years' imprisonment in the Arkansas Division of Correction. He was given an additional ten years for using a firearm in the commission of the offense. On appeal, Reed argues that the trial court abused its discretion in denying his motion for a mistrial and in allowing hearsay testimony. We affirm.

At trial, the following was established. In the early morning hours of August 16, 2020, Reed and his brother were in line to check out at a gas station in Blytheville. While waiting to check out, Willie Wright cut in front of them to prepay for gas. Wright walked out of the store, and upon reentering, he had an interaction with Reed and his brother who were upset

for the line cutting. According to the store clerk, Reed "diffused the situation," and the interaction ended with Wright and Reed hugging and shaking hands.

Reed and his brother then got into their black SUV and drove across the street. Wright finished pumping his gas, got into his truck, and drove off. Reed followed Wright through town. Concerned that he was being followed, Wright called his cousin Vincent Thomas to tell him what was going on and that he planned to stop by Thomas's house. As Thomas and Wright talked in Thomas's front yard, the black SUV slowly drove by the house and then parked at a nearby apartment complex. Minutes later, Reed appeared and shot Wright multiple times, fatally wounding him.

Some of the evidence at trial was elicited through the testimony of Ricky Jefferson, a retired assistant chief of the Blytheville Police Department. He testified that he oversaw the SkyCop camera system during his employment. He said that upon being notified of the shooting, he downloaded video from the SkyCop camera system. According to his testimony, the system included "pole mounted" cameras that "catch events as they go down the street" throughout town. Jefferson explained he was able to see several angles of the events leading up to the shooting. Jefferson testified that after watching the SkyCop videos, he downloaded them onto three disks and gave them to the lead investigator. However, prior to trial, the investigator was terminated and the disks were misplaced. Additionally, the digital copies of the videos were no longer available because the backup drive "crash[ed] and corrupt[ed] itself."

Reed moved for a mistrial, arguing that he was unaware that any copies of the videos existed; and in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the State failed to produce the discs during discovery. The State responded with the following explanation:

> We had [the department's] IT person spend days going back to these hard drives and looking for these videos. The State has done everything. Because I can promise you, we would absolutely have these videos.

> We're not [avoiding] playing them because we think it's beneficial to our case. It is absolutely more beneficial to our case in order to have these videos here and play them for the jury. Because, again, it's obviously more beneficial for [the jury] to see it and watch this Suburban follow behind the truck. We have done everything in our due diligence to have these videos produced, and the Blytheville Police Department continues to tell us they don't know where they are.

The court denied the motion.

Reed's first point on appeal is that the circuit court erred when it denied this motion for a mistrial. He argues that the State violated his due-process rights when it failed to preserve the SkyCop recordings.

The grant of a mistrial is a drastic remedy. *Johnson v. State*, 325 Ark. 197, 926 S.W.2d 837 (1996). A trial court should resort to mistrial only when there "has been an error so prejudicial that justice cannot be served by continuing the trial." *Id.* To establish a due-process violation when potentially useful evidence is destroyed, the defendant must show that the evidence possessed exculpatory value that was evident before the evidence was destroyed and is of such a nature that comparable evidence could not be obtained by other reasonably available means. *Long v. State*, 2024 Ark. App. 98, at 6, 685 S.W.3d 280, 286. In addition, "unless a criminal defendant can show bad faith on the part of the police, failure

3

to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 6, 685 S.W.3d at 286 (quoting *Wenzel v. State*, 306 Ark. 527, at 532–33, 815 S.W.2d 938, 941 (1991)).

In *Long, supra*, appellant contended that he was prejudiced by the State's destruction of body-cam video and failure to produce it in court. However, appellant was unable to show that the video was potentially exculpatory and that it contained evidence that was unobtainable by other means. Further, appellant conceded the video was deleted inadvertently, and because it was not destroyed in bad faith, we held she could not prevail on appeal.

Similarly, here, from the evidence presented at trial, the contents of the video have little exculpatory value, and Reed makes no showing that there is a reasonable probability that, had the tapes been produced, the result would have been different. Instead, the focus of Reed's argument is on the bad-faith aspect. He takes issue with the fact that the State knew before the start of the trial that the video surveillance had been lost yet made no effort to inform him of this fact. He also directs us to testimony that in early 2021, the same department lost evidence in several other cases. Reed contends that this department has a pattern and practice of failing to preserve evidence it has a constitutional duty to preserve.

Reed's argument does not establish bad faith. Jefferson testified that the loss of the video was accidental and that those files, along with evidence for other cases, were lost when the department's former computer system malfunctioned. Accordingly, under these

circumstances, we cannot say that the loss of the video was of such prejudicial magnitude as to warrant dismissal.

Reed's next argument on appeal is that the court abused its discretion when it allowed Thomas to testify on the basis of hearsay evidence. Reed challenges Wright's statement to Thomas that he was being followed. He also challenges Thomas's testimony that he heard Wright say to Reed "your brother is on that bullshit" right before being shot.

The decision to admit or exclude evidence is within the sound discretion of the trial court, and this court will not reverse a trial court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Jones v. State*, 2011 Ark. App. 324, 384 S.W.3d 22. We will not reverse a trial court's evidentiary ruling absent a showing of prejudice. *Mitchell v. State*, 2018 Ark. App. 253, at 5, 549 S.W.3d 375, 379. Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c). Hearsay is not admissible absent an exception provided by law or the rules of evidence.

In overruling Reed's objection to Thomas's testimony as hearsay, the court found the testimony was admissible under Arkansas Rule of Evidence 803(1) as a present-sense impression. A present-sense impression is a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. Ark. R. Evid. 803(1). The statement must be contemporaneous or nearly contemporaneous with the event. *Brown v. State*, 320 Ark. 201, 895 S.W.2d 909 (1995).

Here, Wright's call to Thomas stating that someone was following him was contemporaneous with Reed's trailing behind him in his SUV. This is a correct interpretation of the present-sense-impression exception. *See Thomas v. State*, 62 Ark. App. 168, 176, 973 S.W.2d 1, 4 (1998) (holding that testimony of phone conversation with victim was admissible when the conversation was taking place while the victim was being held at gunpoint). Thus, the trial court did not abuse its discretion in allowing the testimony.

Additionally, the court overruled Reed's objection to Thomas's testimony that Wright stated, "[Y]our brother is on that bullshit." In overruling this hearsay objection, the court found the statement was not offered for the truth of the matter asserted but to provide context for the confrontation. We agree. In this instance, the matter asserted is not the point for which the evidence was introduced. Whether Reed's brother was or was not on something is irrelevant, but it was relevant to give the fact-finders a better understanding of why and how the conflict escalated. *See Dirickson v. State*, 104 Ark. App. 273, 279, 291 S.W.3d 198, 202 (2009) (holding that the officer's statements were not offered to prove the truth of the matter asserted but were instead offered to put defendant's statements in context).

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Jimmy C. Morris Jr.*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.