Cite as 2026 Ark. App. 109

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-25-203

| | | |
|---|---|---|
| MANDY ANN COBB | | Opinion Delivered February 18, 2026 |
| | APPELLANT | |
| | | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FCR-24-585] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE STEPHEN TABOR, JUDGE |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

Mandy Cobb appeals the Sebastian County jury verdict finding her guilty of trafficking methamphetamine and maintaining premises for drug activity. She was sentenced as a habitual offender for a total of sixty years' in the Arkansas Division of Correction. On appeal, she challenges the sufficiency of the evidence, her motion to suppress her statements made to police, and the chain of possession of the methamphetamine. We affirm.

On July 15, 2024, drug task force officers executed a search warrant at Cobb's home in Fort Smith. Cobb and her boyfriend were brought out of the home and handcuffed. Cobb told the police they would find methamphetamine in the house and that it belonged to her. Police found 930 grams of suspected methamphetamine in the home. Cobb was later

interviewed by police and admitted that the methamphetamine was hers and she was selling it.

Prior to trial, Cobb filed a motion to suppress her statements to police alleging that they had not properly advised her of her Miranda rights, and those should therefore be excluded. At the hearing on the motion, Cody Elliott, the Drug Task Force Commander, testified that he advised Cobb of her *Miranda* rights.

The body-camera video of Dalton Waggoner, the lead agent assigned to Cobb's case, was introduced at the suppression hearing. On the video, as Waggoner is walking outside the home, Elliott can be heard advising Cobb of her right to an attorney and her right to stop answering questions. Cobb can be heard responding that she understood. A portion of the video recording from when Cobb was interviewed at the Sebastian County Sheriff's Office was also introduced. In that video, the officer interviewing Cobb noted to Cobb that he had read her *Miranda* warning and that it was "still in effect." Cobb agreed that she understood.

The circuit court denied Cobb's motion to suppress, finding that she was advised of her rights and that her statements were voluntary. The court noted that it found Elliott's testimony that he advised Cobb of her rights to be credible. The court also credited the video, noting, "you could tell that [Elliott] was advising [Cobb] of her rights."

On the day of trial, before opening statements, defense counsel advised the court it would not renew its motion to suppress because, "I think that the evidence was solid in favor

of the State and the Court's ruling on this, and I don't like to proceed down the road of frivolous pursuits."

At trial the jury heard Cobb's recorded interview, telling police that she had picked up a kilogram of methamphetamine the day before and she had been selling drugs out of her home "for a while."

Three separate officers who were at Cobb's home testified to finding methamphetamine. Elliott found some in a dresser in a bedroom; Coby Miner, also with the drug task force, found a bag in the living room filled with smaller baggies; and Josh Arnold with the Arkansas State Police found a bag in the closet. Pictures of the found drugs were admitted without objection. All of the agents involved in the search that day brought suspected drugs found in the house to Waggoner, who testified he labeled the evidence, stored it in the locker at the Barling Police Department, and logged the evidence for the custodian. The evidence custodian testified that he maintained the evidence, documented all transfers, and delivered it to the crime lab with a signed submission form. Cobb objected to the chain of custody.

> The circuit court overruled the objection, stating that
>
> Well, the point of chain of custody is not to ensure everyone, even tangentially, related that may have been involved and touched it is in court to testify. The point of chain of custody is to verify that the items seized as evidence are the items introduced in court.
>
> As to the receipt by Waggoner, we have the photographs that were identified by the officers who found them, it matches up with the items that Waggoner received and has identified here today.

As to the evidence received at the crime lab, I don't think -- I mean, if you want to go into more detail about the security of that, that's fine. But I think the Court is sufficiently satisfied that the items found by the officers who testified that found them were the same items that Officer Waggoner received and identified and the same items that the chemist has testified about as well today. So your objection is overruled at this time.

Cobb moved for directed verdict at the close of the State's evidence, arguing, in the entirety:

I would also, Your Honor, move for a directed verdict at this time, specifically with – the State has not presented enough evidence to carry over to a jury at this point. Any of the evidence the State has presented would lead to conjecture on the part of the jury if they were to make a determination of the case at this point, specifically regarding the elements of both offenses in this case, Your Honor.

The circuit court denied the motion. The jury returned a guilty verdict for trafficking methamphetamine and maintaining a drug premises. Cobb appeals.

We will address Cobb's challenges to the sufficiency of the evidence first. *See Taffner v. State*, 2018 Ark. 99, 541 S.W.3d 430. Cobb argues on appeal that the evidence was not sufficient to support convictions for either trafficking or maintaining a drug premises. However, Cobb's motion for directed verdict was not specific enough to preserve either point for review.

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Whitt v. State*, 365 Ark. 580, 232 S.W.3d 459 (2006). In reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Tillman v. State*, 364 Ark. 143, 217 S.W.3d 773 (2005). This court will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence which is of sufficient force

and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Finally, the credibility of witnesses is an issue for the jury. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

In a jury trial, a motion for directed verdict "shall state the specific grounds therefor." Ark. R. Crim. P. 33.1(a). A motion for directed verdict based on insufficiency of the evidence must specify the respect in which the evidence is deficient. Ark. R. Crim. P. 33.1(c). A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency, such as insufficient proof on the elements of the offense. *Id.* A defendant's failure to challenge the sufficiency of the evidence in the manner required by Rule 33.1 will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict. *Id.*

The entirety of Cobb's motion for directed verdict for both charges was that "the State has not presented enough evidence to carry over to a jury at this point," and that the jury would have to resort to conjecture "specifically regarding the elements of both offenses."

In *Kinsey v. State*, the entirety of the motion for directed verdict for self-defense was, "Also with regard to self-defense, the State has not disproven that. And so we would ask the court to enter a directed verdict on each of those." 2016 Ark. 393, at 7, 503 S.W.3d 772, 776. This was not adequate to preserve the issue for review. *See also Brown v. State*, 374 Ark. 324, 327, 287 S.W.3d 587, 589 (2008) ("The rationale behind this rule is that 'when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the

5

motion, or, if justice requires, allow the State to reopen its case and supply the missing proof.'")(quoting *Pinell v. State*, 364 Ark. 353, 357, 219 S.W.3d 168, 171 (2005)). As the supreme court explained in *Kinsey*¸ the defendant is required to identify specifically how the State's proof was insufficient to meet its burden. 2016 Ark. 393.

Arkansas Code Annotated section 5-64-440(b)(1) provides that a person engages in trafficking a controlled substance if she possesses two hundred or more grams of methamphetamine. Arkansas Code Annotated section 5-64-402 makes it unlawful for any person to knowingly keep or maintain any dwelling for the purpose of using, obtaining, or keeping a controlled substance.

Regarding her trafficking charge, Cobb argues on appeal that there was no DNA or fingerprint testing, the house and bedroom were jointly occupied by her and her boyfriend, and that without her statements to police, there was nothing indicating that it was Cobb, and not someone else, who possessed the drugs. Cobb's arguments to this court center on what constitutes constructive possession, whether she had dominion or control over the contraband, and joint occupancy. None of these things were addressed in her motion, and it was therefore not made with sufficiency to preserve it for our review.

She makes a substantially similar argument pertaining to the maintaining a drug premises charge, concluding that argument the drugs confiscated from the residence were in her boyfriend's possession. Again, the joint-control argument was not part of her discussion in her motion for directed verdict. We therefore affirm both arguments challenging the sufficiency of the evidence.

Cobb also argues that the State failed to prove that she provided a voluntary confession. Before police can question a suspect in custody the suspect must be informed that she has a right to remain silent, that any statement she does make may be used as evidence against her, and that she has a right to the presence of an attorney, either retained or appointed. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). When considering whether a defendant was properly advised of her Miranda rights the appellate court looks to the totality of the circumstances surrounding the interrogation to determine whether the defendant had a requisite level of comprehension of her rights and whether any subsequent waiver was the product of an uncoerced choice. *Wilkerson v. State*, 365 Ark. 349, 353, 229 S.W.3d 896, 899 (2006). The trial court's findings of fact when ruling on a motion to suppress are reviewed for clear error, and the ultimate question of whether the confession was voluntary is subject to a de novo review. *Cummings v. State*, 2017 Ark. App. 573, at 4-5, 534 S.W.3d 155, 158.

Here, the State argues that Cobb waived her argument on appeal that her statement should be suppressed because her counsel told the court prior to trial that counsel would not renew the motion because she believed the ruling was correct. But because Cobb's motion had previously been denied, there was no requirement to renew it prior to trial. *See* Ark. R. Crim. P. 16.2(c)("Renewal of a motion to suppress which has been denied *may* be allowed on the ground of newly discovered evidence or as the interests of justice require.")(emphasis added). Once the motion was ruled on it was preserved for review.

Turning to the merits of Cobb's argument, we hold that she has not demonstrated reversible error. Here, the circuit court credited Elliott's testimony that he read Cobb her Miranda rights. In *Hurst v. State*, our supreme court upheld a denial of a motion to suppress based solely on officer testimony that the accused was read his Miranda rights. 296 Ark. 448, 450, 757 S.W.2d 558, 559 (1988). Because the circumstances surrounding a defendant's custodial confession are for the circuit court to determine, and we defer to the circuit court in matters of credibility, *Smith v. State*, 2021 Ark. App. 255, at 8, we affirm this point.

Finally, we address Cobb's argument that the chain of custody of the methamphetamine was not sufficiently established. Her entire argument on appeal is that "there was no testimony to confirm the multiple bags taken from law enforcement to the state crime lab are, in fact, the same bags and substances retrieved as a result of the search."

We will not reverse a circuit court's ruling on the admissibility of evidence over a chain-of-custody objection absent a showing that the circuit court clearly abused its discretion. *Harris v. State*, 2018 Ark. App. 520, at 12, 561 S.W.3d 766, 773. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision; rather it requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.*

Arkansas Rule of Evidence 901(a) provides that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the item is what its proponent claims. Under Rule 901(b)(1), testimony from a witness with knowledge that the item is what it is claimed to be may

8

establish authentication. Rule 901(b)(4) adds that distinctive characteristics—such as appearance, contents, substance, internal patterns—considered along with the surrounding circumstances, may also serve to authenticate evidence. *See Harris*, 2018 Ark. App. 520, at 10, 561 S.W.3d at 772.

The purpose of establishing a chain of custody is to prevent the introduction of evidence that has been tampered with or is inauthentic. *Long v. State*, 2024 Ark. App. 98, at 10, 685 S.W.3d 280, 287. To prove authenticity of evidence, the State must demonstrate a reasonable probability that the evidence has not been altered in any significant manner. *Id.*, at 10, 685 S.W.3d at 288. It is not necessary that every moment from the time the physical evidence comes into possession of a law-enforcement agency until it is introduced at trial be accounted for by every person who could have conceivably come in contact with the evidence during that period. *Id.* Nor is it necessary that every possibility of tampering be eliminated; it is only necessary that the circuit court, in its discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with. *Id.* Minor uncertainties in chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law. *Id.* The mere possibility that someone can access the contraband is not enough to render evidence inadmissible; some evidence of tampering is also required. *Duggar v. State*, 2013 Ark. App. 135, at 7, 427 S.W.3d 77, 82.

Cobb does not identify any specific break or deficiency in the chain of custody, nor does she offer evidence of tampering or alteration. The testimony from the officers, the

evidence custodian, and the crime lab witness established a reasonable probability that the methamphetamine admitted at trial was authentic and untampered with. Moreover, minor uncertainties in the chain of custody go to the weight of the evidence, not its admissibility. The circuit court did not abuse its discretion in admitting the methamphetamine over Cobb's objection.

Affirmed.

KLAPPENBACH, C.J., and VIRDEN, J., agree.

*Dusti Standridge*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.